Good morning, your honors, and may it please the court. I'm Steve Mather, representing John and Judith Bedrosian. I have with me at the council table Richard Hodge, my co-counsel. Seated in the courtroom is John Bedrosian, one of the petitioners in this case. As difficult as that may be to believe, when this case started, we were all young men. But that was over 14 years ago, and here we are still trying to get our day in court. I think this case presents a situation where it shows the danger in using labels in the administration of justice. We are seemingly labeled as a son-of-boss case, and so therefore the rules should be different, and that we shouldn't have our day in court, and that the government, whatever it may do, is justified in pursuit of that tax, additional tax. Speaking of the day in court, do you concede the question of whether this final notice was properly mailed to you has already been decided? Yes. And doesn't that undercut your argument that you've been wrongfully deprived of your day in court since the notice was properly mailed, and you failed to timely object to it? That's not quite true. We certainly objected to the notice. We didn't file a timely petition because we didn't receive it. As a matter of law, you did receive it. As a matter of law, it was mailed to the correct address. That is a distinction of public order. So your answer may be yes, that it does undercut your argument. That, well, to answer your specific question, we do not concede, or we do not allege that the notice was improperly issued because that issue has already been decided by this court. So to illustrate kind of the problem in this case, I think I would like to cite a few facts that the IRS admits and some corresponding questions that are raised. The first one is the IRS admits that on September 1st of 2006, the IRS billed the Bedrosians about $7 million of tax interest and penalties, even though they legally could not do that. And so the question that's raised from that is, why are we here? And the IRS admitted that they couldn't have done that bill. Secondly, the IRS also admits that they based this bill on one of two notices, and the two notices that were issued almost simultaneously, and the two notices could not be issued at the same time. The IRS admits that. There's two notices that were mutually exclusive, could not be issued at the same time, yet they were. Then the IRS also admits that when the tax court below in the initial proceedings questioned why it was that these two impossibly simultaneous notices were issued, that the IRS lied to the court. And the question that's raised there is, why doesn't that matter? Why doesn't it matter that they were given the contract? You seem to be arguing that if you get two notices, it's the equivalent of getting no two notices. Well, I think if the case is affirmed on appeal, that's exactly what's happened, because we got these two notices, one that was the only notice that we expected that we petitioned and filed and pursued everything on, and the other notice that we didn't receive. But those two notices could not both be issued at the same time. Everybody concedes that. So we petitioned the one we got, didn't petition the one we didn't get. So now the government, a year after the fact, came in and said, oh, sorry, the notice that you petitioned from that we issued at the same time as this other notice, that one's not correct. We shouldn't have issued that notice, and so you're out of court, because we have the sole right to decide what notice should be good and what notice should be bad. So they, and then what they said is, well, this other notice, the FPAW, as we call it, the FPAW was the actually good notice, and you didn't petition that, and that case is over, and so you don't get a day in court on that. So they're saying in our case now, in this appeal, that we don't get a day in court because they unilaterally effectively withdrew the notice that we're supposed to have an automatic right to petition to the FPAW. They're unilaterally withdrawing that and saying you can't pursue your case because we issued another notice, and we're saying now that's the correct notice, even though you petitioned the other one. Are you making some sort of equitable tolling argument? I'm not making an equitable tolling argument. The position that we're taking is actually quite similar to the court's inquiry in the Muruello case that cited the FPAW, and that was examined extensively by both parties. And in that case, the facts are actually quite similar. In that case, it was a 1999 tax year, just like our tax year. Actions had to be taken by October 15th of 2003, just like in our case. In that case, the partnership at issue, we're dealing with the TEFRA partnership rules, that the partnership at issue had flow through partners, so it was quite clearly covered by the TEFRA rules, the same as ours. In that case, the IRS did not audit the partnership within the three-year partnership statute of limitations, the all-encompassing rule, just like in our case. In our case, it's undisputed that the IRS did not do an audit within the normal three-year period. In the Muruello case, to protect the statute of limitations, the IRS issued an effective site of notice of deficiency, which is a term of art, six days before the statute of limitations expired. In our case, it was 11 days before the statute expired, and in fact, the statute had expired anyway. The IRS was unaware of the expiration or didn't fully understand what would happen in the subsequent jurisprudence, but they were attempting to issue the notice 11 days before the statute expired. In the Muruello case, they said, well, there's no notice of beginning of administrative proceeding and no FPAW at the partnership level at the time this notice was issued, so the notice has to be good. Well, in our case, none of those notices were issued within the normal period of limitations, so the partnership proceeding by the same definition of having taken no action before the statute expires had expired in our case as well. Well, the key seems to be that, at least in several other circuits, the rule is that a limitations challenge has to be brought in the partnership proceeding only, and it wasn't here, and it's an affirmative defense, so if it wasn't brought, it's forfeited. I think that's the problem that you face. Now, our circuit has no published authority on that, but that seems to be the universal rule in all the circuits that have considered it. So, why doesn't that completely answer your argument? Well, the answer is that twofold. As you noted, there's no law on this issue in our circuit, and secondly... Right, but why should it be different? Well, I think it's the wrong rule, because the other circuits cite to issues such as, well, there's a code and there's a regulation that defines what a partnership item is, and the partnership items are the things that can be decided in a partnership proceeding, and in the code and in the regulations, there is no mention whatsoever, and these are the IRS's own regulations, there's no mention whatsoever that the statute of limitations is itself a partnership item. It's an affirmative defense. It isn't a partnership item, but it's an affirmative defense to the things that are partnership items. True. Anyway, but you had a second point that you wanted to make as well. Well, I mean, that was the second point, I guess. The first was there's no cases in the Ninth Circuit, and the second is that the rule is wrong, because it may be an affirmative defense, which at least on some level should presuppose an opportunity to assert it. Well, but see, then that takes you back to the fact that the adequacy of the notice is a done deal. It's legally sufficient. The notice to you is legally sufficient, and that's already been decided. So regardless of the practicalities, we're left with the absence of a challenge in the partnership proceeding. That's true. There absolutely is an absence in the partnership proceeding, but our contention is that because the FPAW, as it were, that was mailed on time, was sufficient, it was never intended to be a notice granting jurisdiction to anyone. And as was subsequently discovered after the appeal in this case previously, the IRS issued, or in response to a subsequent motion, filed a declaration from the revenue agent that was the one that was responsible for issuing the notice, and it's clear that at all times she had no intention of making changes to the taxpayer's, the Bedrosian's, return for 1999 when she issued that notice. So the real question is, does that notice have any real effect now that we know that the only reason that the IRS issued the notice was as a mere formality, because according to her declaration, which appears at the excerpts on page 391, she said she participated in a conference call with chief counsel attorneys to discuss how to proceed with the case in that operating loss carry forward deductions claimed on the taxpayer's return for 2000. So she said, in view of my determination that the limitations period for adjusting, or for issuing an FPAW for the 1999 year had expired. So she knew there was no way to issue an FPAW to change partnership items that would affect the Bedrosian's 1999 return, and that wasn't what they were doing. So the real question, and I think this is where Murillo comes into play, is the tax court basically said, well, you can't ask that question. There is an FPAW, so that means there was a proceeding, and we aren't going to ask the question, even though we know, based on this declaration submitted by the IRS under penalty of perjury, that this FPAW was meant to not serve a purpose for 1999. It served no purpose for 1999. But yet, what the IRS did is that about 15 months later, they billed the Bedrosian $7 million based on this notice for 1999 that was supposed to serve no purpose for 1999. And what the IRS did was issue it. It was issued and it was sent to the right address, so you can't even ask if there was any purpose to this notice, if it was really intended to serve any purpose whatsoever. And the oddity of this case is that we know the answer to that question. We know what the purpose was, and it had no purpose for 1999, and we know it because the person that issued it said it had no purpose for 1999. It was just being done as a formality. So the Morello case, as I mentioned, I think is a really good case to say, I mean, the issue in that case was basically reviewing the reason that we knew that the IRS was not conducting a partnership proceeding for that year, which is exactly the inquiry that we're asking here that has already been answered by the IRS, is that there was no partnership proceeding for 1999, and this was just this agent was told by some advisors that this was a notice that had to be mailed. And it was mailed, and it was sent to the legally sufficient address, but it served no purpose. And yet the IRS then is saying, oh, no, no, no, this is the good notice. This FPAW is the one we've got to put all of our stock in, and that means that the petition you filed in response to the notice you received, that the court had jurisdiction over and would give you the opportunity to raise all of these issues and potentially the statute of limitations issue, that case can't go forward because we've decided that this notice we issued for no purpose is the real notice. And that's really the gist of our problem here, is that the government has flip-flopped, they've lied to the court, and the whole goal of this, and I'm sure it is the goal of the government, is this is a son of boss case, and so they should owe the tax, period. It doesn't matter what we did, it doesn't matter what we told the court before, it doesn't matter what we're doing now, it doesn't matter that we sat on this issue for a year to make sure that the taxpayers couldn't file a petition in response to the FPAW. A year. If this was such an obvious issue that the FPAW was the good notice and the notice of deficiency was the bad notice, why is the government sitting on it for a year, allowing our period to petition the tax court expired to even give us a copy of the notice? This is quite a remarkable situation and made entirely more remarkable by this declaration of the revenue agent, Debra Smythe, which basically explained what she was doing. But the tax court, being the tax court, not liking tax shelters and generally ruling in favor of the IRS, they said, oh, no, no, no, we can't look and see the reason why these two notices were issued, even though they couldn't be, we can't ask that question, which of these two notices that is no good, which of the two is no good, because we have a case called Greenberg's Express that says we never looked behind the notice of deficiency. Well, the Greenberg's Express case was a case in which two members or multiple members of the Gambino family were alleging that the IRS was inappropriately selecting them for audit and not applying proper techniques. The court said the notice of deficiency is de novo, we review it, we don't ask why the IRS made these adjustments, we just deal with the adjustments on de novo review in the tax court. It has nothing to do with the situation in which there's two conflicting notices and asking which one is right. Counsel, you have about four minutes. Did you wish to save rebuttal time? Yes, I'll reserve the rest for rebuttal. Thank you. May it please the Court, Deborah Snyder for the Commissioner. I guess first I'd like to rebut the contention that the Commissioner is trying to deny the Bedrosians their day in court. As the tax court held in this case, the Bedrosians' day in court was to challenge the FPAW, and they did not bring that challenge. That rule was Congress's choice, and this court held in 2009 that the Bedrosian was properly noticed. So the Bedrosians' problem is that they can't collaterally attack the FPAW in this case. Well, I do have a question about that, because the argument that they're making, at least as I distill it, is that although the notice was legally sufficient, they didn't in fact receive it. And as we know, that is a possibility. A notice can be lawfully given and valid and yet not actually received. And I'd like you to assume for the sake of my question that that is the case here. If someone does not actually receive a validly served notice, and their time to make the challenge runs out, is there any sort of equitable tolling once they learn of it that would allow them to challenge it at a later time? No, there's no equitable tolling. These deadlines are jurisdictional, and that's discussed by the Supreme Court in a case called United States v. Woods. And there's also a case out of the Fifth Circuit, it might be called AIM, that also said specifically that the 150-day deadline is jurisdictional. But I'd like to return to the premise of your question, which is asking me to accept that the FPAW was validly mailed and not received. And I would note that based on the record, toward the beginning of this case, the Bedrosians actually conceded that they received the FPAW. And this is on page 1,837 of the excerpts of record, where it says, within a period of less than two weeks, petitioners received three separate mailings from Respondent, which notified the petitioners, one, that Respondent had completed a review of the partnership and was asserting adjustments through an FPAA, two, that the FPAA was untimely and they had the right to make an election, and three is the notice of deficiency. Now obviously at some point the Bedrosians changed their position on that matter, but, you know, and ultimately as this Court held, the issue is not actual receipt. The issue is whether we properly mailed it. And if the Court reviews the oral argument transcript from the first argument before this Court, the Court made very clear at that time that it did not really have patience for the Bedrosians arguing that the IRS made a mistake by mailing the FPAW to the address that they told the IRS to mail it to. But that aside, I don't think it's necessarily settled that they did not receive the FPAA. And there's also in the record on page 1,575, Deborah Smith, the revenue agent, said that she called their CPA, Linda Olson, and advised them that the FPAA would be issued. So, you know, I think there have been inconsistent positions taken in this case, but fundamentally I don't think it matters because this Court has already decided that the FPAW was valid and it necessarily follows if the FPAW is valid, a fortiori the notice of deficiency that was issued before the conclusion of the partnership proceedings was invalid. So essentially both things are the law of the case, and not only that, it's a statutory basis for the preclusion because that's the way TEFRA works. As the Court observed earlier this morning, TEFRA says that the tax treatment of partnership items shall be determined at the partnership level, and that's section 6221. And then that determination becomes conclusive. So essentially they're precluded from arguing what they're trying to argue in this case for several reasons, and most prominently that the validity of the FPAA, a fortiori, shows the invalidity of the notice of deficiency. So, I mean, it's true certainly that the IRS issued these two notices, and in retrospect the notice of deficiency turns out to be invalid, but the question then is what's the legal effect of the fact that the IRS issued these two notices? And the, yes? You argue the notice of deficiency is invalid, but your opposition says that the FPAW was already decided that the FPAW was valid. And in its prior opinion, and I quote from page 158 of the excerpts of record, it says, because we determined that the IRS validly mailed the FPAA to the Bedrosians, we affirm the tax court's dismissal for lack of jurisdiction of their untimely petition. So, and the tax court, that's affirming the tax court's holding that the FPAA was properly noticed and therefore valid. So when this Court went on later in the same opinion on page 161 of the excerpts to say that the tax court never had jurisdiction over such deficiency in the first place, such deficiency being the 2005 notice of deficiency, that's actually not dicta. That flows from the fact that the FPAW was valid, which means that the notice of deficiency issued while the partnership proceedings were ongoing was invalid. So, and I'd also like to note, getting back to the premise that the Commissioner is somehow trying to deny the Bedrosians their day in court, is that the government has nothing to fear from the Bedrosians getting a day in court. And that's separate and apart from the invalidity of their transaction. The fact is that if they win on their argument that they elected out of TEFRA, which appears to be the argument that they're making in their brief, although neither the majority nor the dissent agreed with them on that. But if they win on the argument that they elected out of TEFRA, then they lose their statute of limitations argument, which they can't raise here in any event. But if they elected out of TEFRA, the extension form that they signed on the Form 872, that extended their individual limitations period to April 30th of 2005. So the notice of deficiency was sent on April 19th of 2005. It no longer matters if they elected out of TEFRA. It doesn't matter that the extension didn't expressly apply to TEFRA because they elected out. So if they elected out, their statute of limitations is still open. So the government has no incentive to deny them their day in court. And that's not what we're trying to do in any event. The tax court actually recognized this paradox in footnote 9 of its opinion, which is on page 51 of the excerpts, on the other issue, on the section 6231G issue, which they've actually abandoned on appeal, but noted the same kind of principle, that if TEFRA doesn't apply, then that undermines their limitations argument. But of course, TEFRA applies. The FPAA was valid. This Court has decided that the FPAA was valid. And that's the end of the issue. And I guess I would also like to refute the proposition that the tax court should not issue. The government is, you know, first took one view of why notices were issued and then changed its position and took another view. Based on the record, and I say this because an FPAA, first of all, is not issued by one person. But based on the record, the 2006 before Judge Vasquez, the IRS said that there were several purposes that were served by issuing both notices. And one of them was essentially to prevent whipsaw. It said that it's not clear from this return, because as we know, the Bedrosians filed an ambiguous partnership return in the first place that checked that TEFRA did not apply, but then named a tax matters partner and so on. So they said it's not clear from this return whether the Bedrosians were going to argue that they weren't subject to TEFRA, although we certainly thought they were. I think that's certainly a bona fide reason for taking the whipsaw position. But then the IRS also said, which is what the Bedrosians say was a new reason trotted out years later, regardless of what was thought about 1999, clearly there was an open year, and clearly the issuance of the FPAA was necessary in order to protect the assessment of the deficiency resulting from the disallowance of the carryover from 1999 to 2000. So the fact is, at the beginning of the situation when a lot of things were in flux and the return is ambiguous and the law is evolving, doing this could serve a number of purposes. Of course, it turned out the notice of deficiency was invalid, but again, the question is then, what's the legal effect? And the legal effect is that the FPAA was valid and the notice of deficiency was not. And that's something there's a lot of tax court law on, including the decision called GAF, G-A-F. And then moving forward to when the revenue agent filed her declaration, which is what the Bedrosians rely on for their case, she did, again, reiterate this reason that, well, issuing the FPAA could have helped to disallow the carry forward to 2000, but her affidavit in paragraph 9 also supports the fact that it was protective. Because what can happen in these cases is that when things are in flux, and the tax court majority noted this, that what can happen is whichever notice the IRS issues, the taxpayers will turn around and say it should have been a different notice. And we've seen cases like that. So in any event, we're not trying to deny them their day in court. There were certainly, you know, there may have been missteps by both sides in this case. The question, again, is what is the legal effect of those missteps? And the legal effect is, as this Court has already held, the FPAA was valid. The limitations period is a partnership item. And that's something that, as the Court observed, is one of actually the most well-settled issues in TEFRA. And I think there's a pretty good analysis of that in the Federal Circuit's opinions in Keener and Pratty, which from 2009 and 2010. Does the Court have any further questions for me about substantial compliance or any of their arguments or TEFRA in general? I'll take a tutorial. I don't think so. We ask for affirmance. Thank you. Thank you very much. Mr. Mather, you have some rebuttal time remaining. Thank you, Your Honor. Several points with respect to the government's presentation. The government tries to suggest that there is still an open issue with respect to whether the FPAA was actually received or not. There, and I couldn't find it in this short notice, but there is actually a finding by the Court, either the Tax Court or the Ninth Circuit in the opinion before, that they didn't receive it. So whatever may have been... Didn't? Did not? Did not. The taxpayers did not receive the FPAA. There is a finding of that, to that effect. Well, this Court does not make findings, so that would be... Well, or a recitation, maybe, if it was in this Court's opinion. But there is definitely in the record a finding by one of the Courts involved that, or a recitation, that the Bedrosians did not receive the FPAA. Secondly, the government indicated that there is a statutory requirement... We decided that what the IRS did was sufficient, I thought. Yes, it's sufficient mailing. And it also suggests that there was actual receipt. I think it talks about 14 copies sent to 14 addresses, including the one that the accountant required, and, you know, so on and so forth. So it certainly, my reading of our opinion, or disposition, suggests a belief that they did receive it. So we'll have to go back and look at the Tax Court. Yes, I don't believe... Well, I think you may be right that the Ninth Circuit opinion, the prior opinion, didn't, you know, specifically find or recite either way. But there is a record, this voluminous record, that the notice was, the FPAA was not received. It's not just going back to the original hearing on this motion when the parties weren't sure what was going on. Secondly, with respect to the prior ruling of the Court, it is certainly the ruling of the Court on the FPAA that it was mailed properly. And proper mailing is one of the requirements. The issue is bigger than that, in our view. The issue is, was, I mean, did this FPAA serve a purpose? Was it valid? Was there a partnership proceeding that culminated in this FPAA? And I think that's when you get back to the declaration of Deborah Smyth, the revenue agent, and you discover, in fact, there was no proceeding. Yes, there was the notice. The notice was issued, and the Court has determined that it was properly mailed. But is it valid? Was there a proceeding? Because it is the existence of the partnership proceeding that precludes the affected item, the notice of deficiency, from being issued. And that's what the Morello case gets into. In Morello, they argued the partnership proceeding wasn't over, and so the notice was premature. So kind of the flip side, in some respects. And this Court, in a published opinion, determined that, yes, we can look and see if the partnership proceeding that it was, and so the notice was valid. The taxpayer was on the other side of that. But the validity of the notice is not, the validity of the FPAA is not limited just to the mailing issue. And that's what the tax court seemed to be hung up on. It was the mailing issue and the fact that they can't even ask the question of why two notices that couldn't be issued at the same time were. So, the discussion about it damaging our statute of limitations argument, if we elect out, is just, it's temporally wrong. Because this was, if we elect out, we elect it out after the statute of limitation expired. So the agreement that the government was alluding to in their argument is, in fact, had expired before the election would be. It's not a retroactive election, which is different from the 6231G issue that she cited in the footnote. And I see that's my time. It is. Thank you very much. The case just started to be submitted, and we appreciate very much the helpful arguments from both counsel.
judges: Schroeder, Graber, Lefkow